17 So.2d 780

## BOUTWELL v. STATE.

### I Div. 475.

Court of Appeals of Alabama.
March 21, 1944.

Rehearing Denied April 11, 1944.

J. B. Blackburn and Hybart & Chason, all of Bay Minette, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was convicted of the offense of murder in the second degree and his punishment fixed at imprisonment in the penitentiary for the term of fifteen years.

A fight, with so many angles that we might as well call it a "free for all" fight, broke out in the "Juke joint" operated by one Ed Tietgen. It "broke" at about 12:00 or a little after, on the midnight of October 3, 1942. The people who had been "making merry" in the "joint" were leaving for their homes, or for other points. Only some 15 or 25 were present at the time.

A "Juke joint," we gather from the testimony—our dictionary gives no definition—is a place where food and drinks are dispensed, and dancing is indulged.

The "animation" would seem to be sustained—judging from the one here involved—not more from the "dancing" than from the fact that "beer" was freely sold and consumed, under license from the State.

The "beginning" of the "sordid mess" which culminated in the death, by knife wounds, of William Swann—for whose murder appellant stands convicted—was by a conversation, quickly eventuating into a blow or blows, between one Knopp, one Schultz, Tietgen, the proprietor of the place, and appellant. It is unnecessary for us to try to unravel the conflicting and contradictory testimony as to this phase of the matter.

Appellant is represented by able counsel here; and in one of their briefs they say: "In discussing the first proposition that appears in the record, that is as to what was said and done in the conversation of Knopp, Schultz, Tietgen and the appellant, the Attorney General evidently overlooked the fact that the appellant conceded in his brief that all of this was a part of the res gestae, and was admissible in evidence, and that the lower court committed no error in permitting the same to go to the jury."

We agree with the conclusion reached by appellant's counsel; and this obviates any further discussion of the exceptions reserved to rulings admitting the testimony to which reference is made above.

One Leslie Resmondo, who seemed to live with his wife, and some children, in a one-room house, was introduced as a witness by appellant to impeach a State's witness, Mauldin, by showing that Mauldin had made statements to Resmondo, contradictory of his testimony on the trial of the case.

The State, in rebuttal of this, introduced Mrs. Leslie Resmondo, for the purpose of showing that she was present at the time Mauldin had his conversation with Leslie Resmondo, and that Mauldin made no such contradictory statements. We see no valid objection to the questions propounded to Mrs. Resmondo; although it did develop in her testimony that she was for a short time out of "hearing distance" of whatever Mauldin might have said. Her testimony seems to us to amount to nothing; and we cannot see how it could have harmed appellant. But if it was thought

to have done so—the questions to which objection was interposed being proper—the way to have had advantage of the matter was by a motion to exclude the testimony. No such motion was made. There is no error shown.

The State's testimony was ample to show that William Swann came to his death as a result of a stab or cutting wound, or wounds, inflicted by a pocket knife wielded by appellant; and that said wound or wounds were inflicted without justification. In other words, the verdict of the jury is fully supported by the testimony.

The only other matter appearing to require mention by us is the action of the trial court in allowing one of the jurors, Vaughn, to testify on the hearing of the motion for a new trial, over appellant's objection, that he, in the jury room, while the jurors were deliberating on their verdict, voted for the lowest number of years of any juror, before the jury came to a verdict.

There is nothing shown here which requires a reversal of the judgment of conviction.

Appellant had introduced on the hearing of said motion for a new trial two affidavits; in one of which it was deposed that Vaughn had, prior to the trial, stated to the affiant that he would, if chosen on the jury, "give them what was coming to them;" in the other of which it was deposed that Vaughn had, likewise, stated that (in substance) he would "put them in the electric chair"—referring to appellant.

Vaughn flatly denied making either statement. And, in overruling the motion for a new trial, the trial judge frankly stated as follows, to-wit: "I tell you gentlemen, I believe everything the juror Vaughn has said about this thing and I therefore overrule your motion for a new trial in this case."

This really concludes the discussion, and renders innocuous the question of whether Vaughn did or not testify as to his preliminary vote in the jury room.

But aside from the above, the authorities do not hold that a juror, as Vaughn, here, should be prohibited from disclosing his vote in the jury room where a "prima facie" case has been made—as by the two affidavits mentioned—that said juror has stultified himself in some way by his service on the jury, when he could by such disclosure corroborate his denial of the charges made against him.

This seems to be the clear implication, if not direct holding, of the case of Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993. And the holding in this case appears to have had at least the tacit approval of our Supreme Court in the opinion in Alabama Fuel & Iron Co. v. Powaski, 232 Ala. 66, 166 So. 782.

The case appears to have been fairly tried, and we can find, and have been pointed to, no erroneous ruling for which the judgment should be reversed.

It is affirmed.

Affirmed.

SIMPSON, Judge (concurring).

I agree with Judge RICE that the testimony of Mrs. Resmondo was without possible prejudice to defendant, so, if erroneously admitted, under the rule now prevailing, a reversal cannot be rested thereon. The rule of review, since the adoption of Rule 45, is not as quoted (dissent hereinabove) in the Maxwell case, supra. Now, substantial error is not presumed. It is appellant's burden to show it. And "no judgment may be reversed * * * (for) the improper admission * * * of evidence * * * unless in the opinion of the court to which the appeal is taken * * * after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Supreme Court Rule 45, Code 1940, Title 7, Appendix, p. 1022; Bonner v. State, 28 Ala.App. 406, 187 So. 643; Robinson v. State, 238 Ala. 441(5), 191 So. 655.

The other proposition of law was, in my opinion, also correctly exposited by Judge RICE, so I concur in the affirmance of the judgment.

BRICKEN, Presiding Judge (dissenting).

I cannot concur in the opinion prepared by my associate, Judge RICE, in this case.

Having carefully read and attentively considered the entire record, and briefs of counsel, also the points of decision here presented, it appears without controversy that the principals in this case, that is to say, the deceased and the defendant, were strangers to each other and had, so far as the record discloses, never seen each other prior to the fatal difficulty, the basis

of this prosecution. It further appears that the difficulty was begun by a trivial matter of conversation between one Knopp and this appellant, each claiming that the other brought on the difficulty, and hit the first lick, following which there was much confusion, and after things were quieted down, the body of the deceased was found outside of the building in which the difficulty was started, some short distance away. The evidence is circumstantial in its tendency to establish the guilt of the defendant, who in testifying denied striking or cutting the deceased, or having any difficulty with him whatever. The principal witness for the State was one Mauldin upon whose testimony the conviction of this appellant, in the main, necessarily rested. In order to combat, refute, and contradict the testimony of said Mauldin, the defendant introduced as his witness one Leslie Resmondo, who testified for the defendant "that he knew Earl Mauldin, who testified for the State, and that Earl Mauldin came to his home and stayed around there about forty-five minutes or an hour, according to his best recollection, about four or five weeks after the deceased was killed, and told him that he had sworn a damn lie about Boutwell killing Swann, but that he had to stick to it. He said that he did not see Boutwell kill Swann, but that he was drunk at the place and saw nothing."

On cross-examination, the witness was asked as to who was present, and he stated "his wife was with him at the time. She and the three kids. She was in the same room cooking. I don't know that she was right there in the house that very moment whenever he spoke those words. That it was a big room and a small room and that's where she was cooking. That she wouldn't have been further than the back porch from them."

In contradiction of this testimony the State was permitted over the objection and exception of the defendant to put Mrs. Leslie Resmondo on the stand, and prove by her that she didn't hear any conversation between Earl Mauldin and her husband, with reference to the case of Mr. Swann getting killed. That she did not hear Mauldin make a statement there that he had sworn to a damn lie but that he had to stick to it. Preliminary to this testimony of hers she testified that she knew Earl Mauldin, that he was her second cousin, that he came to their house sometime back, couldn't recall how long it was, must have been a good little time back. That the house had just one large room. That he was in the room with Earl Mauldin, when he came there, that her husband was there talking to Earl Mauldin, that she was in hearing distance of them part of the time they were talking, but not all the time. That she went outside and pumped water at one time. That he stayed there about an hour. This witness on cross-examination stated: "I didn't hear all of the conversation that took place there. * * * I remember going out and pumping a bucket of water. I wouldn't say I didn't go out at other times." The testimony of this witness was allowed by the court, as stated, over the objection and exception of defendant.

As to the foregoing the opinion prepared by associate Judge RICE says:

"We see no valid objection to the questions propounded to Mrs. Resmondo; although it did develop in her testimony that she was for a short time out of 'hearing distance' of whatever Mauldin might have said. *Her testimony seems to us to amount to nothing; and we cannot see how it could have harmed appellant.* But if it was thought to have done so—the question to which objection was interposed being proper—the way to have had advantage of the matter was by a motion to exclude the testimony. No such motion was made. There is no error shown."

As to the foregoing, the writer is of the opinion this insistence is crucial to defendant's case, and to say "Her testimony [amounted] to nothing; and we cannot see how it could have harmed appellant," borders upon the absurd, and such expression necessarily involves an unusual and unwarranted stretch of imagination. Again I state it was crucial in this case, and that manifest injurious error prevailed in the court's rulings in this connection. As to the manner of its presentation, my associate wipes it aside, by stating: "But if it was thought to [be harmful] * * * *the way to have had advantage of the matter was by a motion to exclude the testimony. No such motion was made.*" With all due respect, the above holding is not the law; hence my associate was in error in thus stating it. The law is: Where there is an objection to a question propounded to a witness in the trial of any cause, and the objection is overruled and exception reserved, *it shall not be necessary to make a motion to exclude the answer of the witness in order to put the*

*court in error on his ruling on such objection.* Such is the express terms of the Statute. Section 446, Title 7, Code of Alabama 1940.

The point under discussion has been definitely decided by this court in our case of Byrd v. State, 17 Ala.App. 301, 84 So. 777, 778, where this court stated the correct rule and said:

"The rule is that evidence which has no direct tendency to contradict a witness is not admissible; and so a witness who testifies positively as to a certain fact cannot be contradicted by testimony of another witness that he did not know of such fact, in the absence of any showing that the latter witness would have been cognizant of the fact if it had existed."

Second headnote in this case reads as follows:

"In a prosecution for assault and battery, where a witness testified to threats by the assaulted party, it was error to admit evidence by a witness, not shown to have been present when the threats were made, that he heard no such threats."

It is conceded that the case, on its merits, under the disputed facts was for the jury.

The law in its wisdom provides that every person charged with crime is presumed to be innocent, and this presumption is not an empty or meaningless provision; to the contrary, it is regarded as evidence in behalf of the accused, and attends him as such throughout the trial, or until the presumption is overcome by legal evidence which shows his guilt beyond all reasonable doubt and to a moral certainty.

It is the law that the guilty, as well as the innocent, have a right to be tried in accordance with the law of the land. The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and as to the guilty, the law provides that such shall not be punished except in the mode and manner provided by the law. Patterson v. State, 202 Ala. 65, 79 So. 459.

Our Supreme Court (speaking through the late Eminent Justice McClellan), on the question of the doctrine of error without injury in a criminal case, said:

"We have the case of the admission, against objection, of palpably irrelevant testimony. It may be—indeed, it is highly probable—that this evidence did not prejudice the defendant. Nay, further, we are utterly unable to see that it did or could have worked him injury. But,

on the other hand, we cannot affirmatively see that it did not injure him; and we do not feel that safety and certainty which the rule, even in civil cases, requires to rebut the presumption of injury from error, that no harm was done, which would warrant us in holding this error to have been without prejudice. 1 Brick.Dig. p. 780, § 106. And while my own opinion is, that in principle, the rule should be the same, in both civil and criminal cases, yet it can not be denied that it is much more strictly adhered to, in the sense of requiring greater assurance, if possible, that injury has not resulted in the latter class of cases, if, indeed, our decisions have not established the absolute doctrine, that there is no such thing as error without injury in a criminal cause, except where it affirmatively appears that the defendant was benefited by the ruling of which he complains." Maxwell v. State, 89 Ala. 150, 164, 7 So. 824, 828.

The erroneous rulings of the trial court hereinabove discussed, and also the erroneous action of the court in overruling and denying defendant's motion for a new trial, require a reversal of the judgment of conviction from which this appeal was taken in order that the defendant, upon another trial, may be accorded a fair and impartial trial such as the law contemplates and provides.